**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STEVEN GRAVLEY, SR., TYRONE BANKS, AND BARBARA WELZENBACH,** individually and on behalf of all others similarly situated<br><br>*Plaintiffs*,<br><br>v.<br><br>**FRESENIUS VASCULAR CARE, INC. d/b/a AZURA VASCULAR CARE**<br><br>*Defendant*. | **CIVIL ACTION**<br><br>**NO. 24-1148** |

**<u>MEMORANDUM</u>**

**Baylson, J.**                                                                                    **July 24, 2025**

## I.    BACKGROUND

Plaintiffs Steven Gravley, Sr., Tyrone Banks, and Barbara Welzenbach ("Plaintiffs") bring this putative class action, alleging that Defendant Fresenius Vascular Care, Inc. d/b/a Azura Vascular Care ("Defendant") breached its duty to care for patients' confidential personal information when third party hackers allegedly accessed confidential patient information from Defendant's computer systems in a data breach incident.  The Amended Complaint asserts several State law claims, including negligence, negligence per se, breach of fiduciary duty, breach of implied contract, unjust enrichment, violations of consumer protection laws, breach of confidence, and declaratory and injunctive relief.[1]

Following a one-day mediation, Counsel for both parties agreed to the terms of a class

---

[1] This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d)(2)(A) because at least one member of the class is a citizen of a different state than Defendant, there are more than 100 members of the class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.  Am. Compl. (ECF 16), ¶ 49.

settlement.  The Settlement Class is defined as:

> All natural persons whose Personal Information may have been
> compromised in the Data Breach disclosed by Azura, including all
> persons who were sent notice of the Data Breach.  Excluded from
> the Settlement Class are:  (1) the Judge(s) presiding over the Action
> and members of their immediate families and their staff; (2) Azura,
> its subsidiaries, parent companies, successors, predecessors, and any
> entity in which Azura or its parents, have a controlling interest, and
> its current or former officers and directors; (3) natural persons who
> properly execute and submit a Request for Exclusion prior to the
> expiration of the Opt-Out Period; and (4) the successors or assigns
> of any such excluded natural person.

ECF 38-1 at 4.  Under the Class Action Settlement Agreement, Defendant agreed to create a non-

reversionary Settlement Fund of $3,150,000, and class members who did not opt out and whose

claims were timely submitted were entitled to select one of two payments:  (a) claims for

documented losses, up to $10,000; or (b) a *pro rata* cash payment.  ECF 38-1 at 4; see also

Settlement Agreement at ¶ 3.4, ECF 33-2.  The class consists of 333,798 members, ECF 41-2, ¶ 7,

leaving a per capita recovery of approximately $9.43.  However, accounting for all claims

submitted through the claims deadline, the settlement administrator estimates that the *pro rata*

cash fund payment will be $134.77.  ECF 46-3, ¶ 10.

On February 24, 2025, the Court entered an Order granting preliminary approval of the

Class Action Settlement, conditionally certifying the Settlement Class pursuant to Federal Rules

of Civil Procedure 23(a) and 23(b)(3), appointing class representatives, appointing class counsel,

and approving the proposed notice plan.  ECF 34.  Pending before this Court is Plaintiffs' Motion

for Final Approval of Settlement Agreement (ECF 41) and Plaintiffs' Motion for Attorney Fees,

Litigation Costs and Expenses, and Service Awards (ECF 38).

The Court held a final approval hearing on June 16, 2025, giving the parties an opportunity

to be heard.  No settlement class member objected to the Settlement and only four settlement class

members opted out of the Settlement.  ECF 46-3, ¶¶ 5–6.  After the hearing, the Court ordered

Plaintiffs to submit a supplemental memorandum with a final accounting of the claims and proposed payments, additional detailed timekeeping records for certain attorneys worked on the case, and other miscellaneous materials.  ECF 44.

As examined in closer detail below, Plaintiffs have demonstrated that the overall settlement is fair and reasonable, and that approval of the overall settlement is warranted.  This Court is also satisfied based on the parties' briefs, affidavits, and the fairness hearing that counsel vigorously represented their respective clients, and that the settlement resulted from hard bargaining without any evidence of collusion.  However, as explained below, the Court will reduce the amount of requested fees for Class Counsel.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."  The court must determine that the proposed settlement is "fair, reasonable, and adequate."  In re Prudential Ins. Co. of Am. Sales Practice Litig., 148 F.3d 283, 316 (3d Cir. 1998) (citation modified).  In considering a class action settlement, the district court must weigh the interests of "avoiding protracted litigation" and "intrud[ing] overly on the parties' hard-fought bargain" with the district court's "obligation as a fiduciary for absent class members to examine the proposed settlement with care."  In re: Google Inc. Cookie Placement Consumer Priv. Litig., 934 F.3d 316, 326 (3d Cir. 2019).  The district court's duty to scrupulously examine the fairness of the proposed settlement is heightened "where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously."  Id. (quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004)).

The Third Circuit applies a nine-prong test—the Girsh factors—to determine whether a

3

proposed class action settlement is reasonable:

    (1) The complexity, expense and likely duration of the litigation;
    (2) The reaction of the class to the settlement;
    (3) The stage of the proceedings and the amount of discovery completed;
    (4) The risks of establishing liability;
    (5) The risks of establishing damages;
    (6) The risk of maintaining the class action through the trial;
    (7) The ability of the defendants to withstand a greater judgment;
    (8) The range of reasonableness of the settlement fund in light of the best possible recovery; and
    (9) The range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975) (citation modified).  The Third Circuit has also suggested additional factors to consider, known as the Prudential considerations, which include: (1) the maturity of the underlying substantive issues, (2) the existence and probable outcome of other claims, (3) the results likely to be achieved for other claimants, (4) opt-out rights, (5) reasonableness of fees, and (6) claim processing fairness.  In re Prudential, 148 F.3d at 323.[2]

District courts "must make findings as to each of the Girsh factors, and the Prudential factors where appropriate," and "cannot substitute the parties' assurance or conclusory statements for [their] independent analysis of the settlement terms."  In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 350–51 (3d Cir. 2010).  In Baby Products, the Third Circuit presented an additional inquiry for a thorough analysis of settlement terms:  "the degree of direct benefit provided to the class."  Baby Products, 708 F.3d at 174.

III.    **MOTION FOR FINAL APPROVAL OF SETTLEMENT**

Final approval of a class action settlement is within the district court's discretion. Eichenholtz v. Brennan, 52 F.3d 478, 482 (3d Cir. 1995).  For the reasons provided below, in

---

[2] "Unlike the Girsh factors, each of which the district court must consider before approving a class settlement, the Prudential considerations are just that, prudential.  They are permissive and non-exhaustive, illustrat[ing]…[the] additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms."  In re Baby Products Antitrust Litig., 708 F.3d 163, 174 (3d Cir. 2013).

weighing the requirements of Federal Rule of Civil Procedure 23, the <u>Girsh</u> factors, and the <u>Prudential</u> and <u>Baby Products</u> considerations, the Court finds that the Settlement Agreement is fair, adequate, and reasonable.

## A. Federal Rule of Civil Procedure 23

Before turning to the fairness of the settlement, the Court must first analyze whether the proposed class to be certified for settlement satisfies Rule 23's requirements.  A class action is permitted if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Additionally, as Plaintiffs seek certification of the settlement class under Rule 23(b)(3), the class must be ascertainable.  <u>Marcus v. BMW of N. Am. LLC</u>, 687 F.3d 583, 592–93 (3d Cir. 2012).

The Court finds that each of these factors are satisfied here.

1.      **Numerosity** – The class consists of over 300,000 members.  "[N]umerosity is generally satisfied if there are more than 40 class members." <u>In re Nat'l Football League Players Concussion Inj. Litig. ("In re NFL")</u>, 821 F.3d 410, 426 (3d Cir. 2016) (citing <u>Marcus</u>, 687 F.3d at 595).

2.      **Commonality** – The claims all stem from an alleged data breach incident occurring around September 27, 2023, Am. Compl. (ECF 16), ¶ 4 and raise common questions regarding Defendant's alleged breach of a duty to protect class members' personal information from exposure to potential fraud.  <u>Rodriguez v. Nat'l City Bank</u>, 726 F.3d 372, 382 (3d Cir. 2013) ("A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." (citation modified)); <u>In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.</u>, 795 F.3d 380, 397 (3d Cir. 2015)

(commonality can be satisfied even "when some members' claims were arguably not even viable").

3.      **Typicality** – The claims of the class representatives are virtually identical to the claims of the absent class members, each arising from the same alleged course of conduct. Baby Neal for & by Kanter v. Casey, 43 F.3d 48, 57 (3d Cir. 1994) ("The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented.").

4.      **Adequacy of Representation** – The Court is satisfied that the named Plaintiffs understand the nature of their claims and duties as class representatives, and adequately represented the class through their participation and active collaboration with counsel. ECF 33-3, ¶¶ 29–31; ECF 38-2, ¶ 20; In re NFL, 821 F.3d at 430 ("A class representative must represent a class capably and diligently."). Class counsel has extensive experience litigating these data breach class actions, particularly within this district,[3] and pursued settlement through mediation after arms-length negotiation. ECF 33-3, ¶¶ 7–12; ECF 38-2, ¶¶ 6–8; In re NFL, 821 F.3d at 429 (analyzing class counsel's adequacy of representation under Rule 23(g)).

Additionally, the Court finds that Rule 23(b)(3)'s predominance and superiority tests are satisfied. Fed. R. Civ. P. 23(b)(3) ("questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."). All class members were allegedly harmed by the same alleged breach of duty, thus common issues

---

[3] See, e.g., In re Philadelphia Inquirer Data Security Litigation, No. 24-cv-2106, 2025 WL 845118 (E.D. Pa. Mar. 18, 2025) (Marston, J.) (Class counsel includes Shub, Johns, & Holbrook, LLC); Bianucci v. Rite Aid Corp., No. 2:24-cv-03356, 2025 WL 704284 (E.D. Pa. Mar. 4, 2025) (Bartle, J.) (Class counsel includes Shub Johns & Holbrook and Ahdoot & Wolfson).

regarding Defendant's alleged duty to care for the personal information of its patients predominate over individual questions of the degree of harm to class members from the data breach. Drummond v. Progressive Specialty Ins. Co, __ F.4th __, 2025 WL 1860993, at *4 (3d Cir. July 7, 2025) (the proper predominance inquiry is "whether common issues predominate over individual issues with respect to proving the elements" of the cause of action). Further, litigating the claims of over 300,000 individuals with common injuries as a class is superior to other available methods of adjudicating the controversy. The class is also ascertainable because the parties used information maintained in Defendant's records to identify putative class members. Am. Compl., ¶ 213; ECF 41-2, ¶ 7.

**B.  Adequacy of Notice to the Settlement Class**

The Court finds that the Notice to the class complied with Rule 23(c)(2)(B) and principles of due process, as class members received the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and the Notice "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections," Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950). An experienced claims administrator, RG/2 Claims Administration LLC ("RG/2 Claims"), served CAFA notice and documents required under 28 U.S.C. § 1715(b)(1)–(8) to the United States Attorney General and 56 State Attorneys General by Federal Express or Certified Return Receipt Requested First-Class mail. ECF 41-2, ¶ 6. RG/2 Claims took steps to obtain the most up-to-date contact information for class members, emailed notice to 35,799 class members with a valid email address and served the notice by mail to class members without a valid email address. Id., ¶¶ 7–11. RG/2 Claims published a settlement website with a summary of the settlement, class members' rights, links to submit claims electronically, contact information for the administrator and class counsel, and PDF copies of important court documents. Id., ¶ 13. In addition, RG/2 Claims set up a settlement P.O. Box, a

toll-free number, an email account, and published the Notice by press release.  Id., ¶¶ 12, 14–16.

### C. Fairness of the Settlement

#### 1. Presumption of Fairness

A presumption of fairness attaches to a proposed settlement if "(1) the negotiations occurred at arm's-length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." In re NFL, 821 F.3d at 436 (citation modified).

The Court finds that the Settlement Agreement is entitled to a presumption of fairness.  No class members objected, ECF 46-3, ¶ 6, and counsel participated in an all-day mediation, exchanged pre-mediation discovery, and prepared detailed mediation statements.  ECF 38-2, ¶ 7. Though there has been no formal discovery, the Court is satisfied that Class Counsel had the ability to "assess the value of the class' claims and negotiate a settlement that provides fair compensation," In re NFL, 821 F.3d at 436–37, considering Class Counsel's experience handling data breach class actions,[4] Class Counsel's "extensive pre-suit investigations" and "lengthy interviews of Plaintiffs and other class members," and the informal pre-mediation discovery, ECF 38-2, ¶ 6.

#### 2. Girsh Factors

The Court concludes, for the reasons detailed below, that the Girsh factors weigh in favor of approving the Settlement.

#### a. Complexity, Expense and Likely Duration of Litigation

The first Girsh factor considers "the probable costs, in both time and money, of continued litigation." In re Cendant Corp. Litig., 264 F.3d 201, 233 (3d Cir. 2001) (citation modified).

---

[4] See supra note 3.

This factor favors of approval because the class alleges damages arising from a data breach incident and raises claims that involve complex and novel legal questions.  See In re Wawa, Inc. Data Sec. Litig., No. 19-cv-6019, 2023 WL 6690705, at *7 (E.D. Pa. Oct. 12, 2023) (Pratter, J.) (commenting that data breach litigation is "an area of law that has not yet been fully developed").  The parties would likely face significant expenses in briefing and arguing summary judgment, resolving complex choice of law questions, and preparing dueling expert reports.

### b.  Reaction of the Class to the Settlement

The second Girsh factor "attempts to gauge whether members of the class support the settlement."  In re Prudential, 148 F.3d at 318.  Here, of the over 90% of class members that were notified, only four class members opted out of the settlement and none objected.  ECF 46-3, ¶¶ 5–6.  The claims rate of 3.83%, id., ¶ 7, is a relatively high response rate in data breach class actions, see In re Wawa, Inc. Data Sec. Litig., 141 F.4th 456, 476 (3d Cir. 2025) (commenting that a claims rate of 2.56% is comparable to other low-harm data breach class action settlements).  This factor favors approval of the settlement.

### c.  Stage of Proceedings and Amount of Discovery Completed

The third Girsh factor "captures the degree of case development that class counsel have accomplished prior to settlement."  In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 813 (3d Cir. 1995).  Class Counsel attests that it conducted "extensive pre-suit investigations that included factual research and lengthy interviews of Plaintiffs and other class members," and "review[ed] Plaintiffs' documentation and all documents produced by Defendant related to the data breach[.]" ECF 38-2, ¶ 6.  The parties also "exchanged pre-mediation discovery with Defendant[.]"  Id., ¶ 7.  Although the case settled at an early stage before formal discovery commenced, the Court is satisfied based on Class Counsel's pre-suit evaluation of the claims, the exchange of pre-mediation discovery, and experience litigating these types of cases, that Class

Counsel "had developed enough information about the case to appreciate sufficiently the value of the claims." In re NFL, 821 F.3d at 439.

### d. & e.  Risks of Establishing Liability and Damages

"The fourth and fifth Girsh factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." In re Prudential, 148 F.3d at 319.  Thus, these factors look to "the potential rewards (or downside) of litigation ... had class counsel elected to litigate the claims rather than settle them," and the "expected value of litigating the action rather than settling it at the current time." General Motors, 55 F.3d at 814, 816.

The litigation risks in this case are considerable.  Defendant argues in its Motion to Dismiss that it hired a third-party forensic firm to investigate the alleged data breach and found "no evidence that any Azura data was taken, exfiltrated or used to commit fraud." ECF 17-1 at 2.  In addition to posing obvious risks for establishing damages at trial, this also potentially raises considerable legal hurdles for class members to establish Article III standing.  See Clemens v. ExecuPharm Inc., 48 F.4th 146, 155–56 (3d Cir. 2022) (holding that "in the data breach context, where the asserted theory of injury is a substantial risk of identity theft or fraud, a plaintiff suing for damages can satisfy concreteness as long as he alleges that the exposure to that substantial risk caused additional, currently felt concrete harms.").

### f.  Risks of Maintaining the Class Action Through Trial

The sixth Girsh factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." Warfarin, 391 F.3d at 537.  While the Court preliminary granted certification of the settlement class, there is no guarantee that Plaintiffs would maintain that status through litigation, as "[a] district court can alter or amend its decision to certify a class under Rule 23(c)(1)(C). Corra v. ACTS Ret. Servs., Inc., No. 22-2917, 2024 WL 22075,

at *8 (E.D. Pa. Jan. 2, 2024) (Pratter, J.).  This factor is therefore neutral.

### g.  Ability of Defendant to Withstand a Greater Judgment

The seventh <u>Girsh</u> factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." <u>Cendant</u>, 264 F.3d at 240.  This factor "is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." <u>In re NFL</u>, 821 F.3d at 440.  Since these considerations were not raised in this settlement, this factor is neutral.

### h.  & i. Range of Reasonableness of Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

These factors favor approval because data breach litigation is novel and the chances of prevailing on the merits are uncertain.  Recoverable damages in a data breach class action are speculative because, as far as the Court is aware, such a class action has never proceeded to trial. In <u>Ward v. Flagship Credit Acceptance LLC</u>, No. 17-cv-2069, 2020 WL 759389 (E.D. Pa. Feb. 13, 2020) (Baylson, J.), the Court rejected the settlement agreement as providing class members with *de minimis* recovery ($35.30 per claimant) in light of class members' potential recovery under the Telephone Consumer Protection Act (TCPA) of at least $500 per violation and by comparison to other TCPA settlements which provided much greater recovery.  Unlike in <u>Ward</u>, damages here are not tethered to a statute and are uncertain.

### 3.  <u>Prudential</u> Considerations

On balance, the <u>Prudential</u> considerations are neutral, as some factors weigh in favor of approving the Settlement Agreement and some against.  While the case has settled at an early stage of the litigation before the substantive issues have fully matured, and, as discussed below, the fees requested are not reasonable, the Settlement Agreement treats class members' claims fairly and there is an independent claims administrator, RG/2 Claims, processing class members' claims.

### 4. __Baby Products__ Considerations

The final factor for consideration of the Settlement's fairness is "the degree of direct benefit provided to the class." In re Baby Products Antitrust Litig., 708 F.3d 163, 174 (3d Cir. 2013). This entails considering "the number of individual awards compared to both the number of claims and the estimated number of class members, the size of the individual awards compared to claimants' estimated damages, and the claims process used to determine individual awards." Id.

The first consideration, the number of individual awards, is not relevant here "because each class member who submitted a valid claim is eligible to receive an individual award." Ward, 2020 WL 759389, at 22. However, the other two considerations favor approval. Each claimant who elected to receive a *pro rata* distribution is slated to receive $134.77, which is a significant sum in a case with substantial risk and speculative damages. For claimants who submitted a claim for a documented loss, the Settlement employs a neutral claims evaluation process whereby the independent Settlement Administrator determines the validity of those claims. The Settlement requires that the administrator notify the Claimant of any deficiency in the claim form, provides the claimant 30 days to cure deficiencies and re-submit the claim, and requires the administrator to "exercise reasonable discretion" to determine whether the defect has been cured. ECF 33-2, ¶ 3.7.

## IV. MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

Rule 23(h) authorizes the Court to award reasonable attorney's fees and nontaxable costs in a certified class action. Fed. R. Civ. P. 23(h). Plaintiffs seek an Order approving payment from the $3,150,000 settlement fund of (a) $1,102,500 in attorneys' fees; (b) $14,062.32 in litigation expenses and costs; and (c) Service Awards of $2,500 to each of the three Class Representatives. ECF 38-1 at 1. The Court will approve the requested litigation expenses and service awards to the three Class Representatives but will reduce the fee award to 25% of the common fund, which totals

$787,500.

### A.  Litigation Expenses and Services Awards

According to Class Counsel's joint declaration, ECF 38-2, the two firms incurred $14,06.32 in typical litigation expenses consisting of electronic research costs, filing fees, mediation fees, postage fees, and expenses related to professional legal services, and are not seeking reimbursement for expenses incurred as a result of traveling to Florida for an in-person mediation.  ECF 38-2, ¶¶ 17–19.  The Court finds that these are reasonable litigation expenses.

The Court also finds that the proposed $2,500 incentive awards to each of the three named Plaintiffs is reasonable.  These service awards are intended to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation." Sullivan v. DB Invs., Inc., 667 F.3d 273, 333 n.65 (3d Cir. 2011) (internal quotation marks and citation omitted).  The named Plaintiffs took an active role by collecting documents and providing information to Class Counsel to help secure substantial relief for the benefit of all class members. ECF 38-2, ¶ 20.

### B.  Fee Award

Plaintiffs request 35% of the common fund as an award for attorneys' fees.  Courts generally apply one of two methods to evaluate the reasonableness of requested fees:  the percentage-of-recovery or lodestar method.  In class actions involving a common fund such as this one, the Third Circuit favors applying the percentage-of-recovery method because "it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure."  In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 300 (3d Cir. 2005) (citation modified); see also Cantave v. Saint Joseph's Univ., No. 23-cv-3181, 2024 WL 4829718, at *5 (E.D. Pa. Nov. 19, 2024) (Baylson, J.).  The Third Circuit has recommended using the lodestar method to cross-check the reasonableness of the award to "ensure that the proposed fee award [under the

percentage-of-recovery method] does not result in counsel being paid a rate vastly in excess of

what any lawyer could reasonably charge per hour, thus avoiding a 'windfall' to lead counsel." In

re Cendant Corp., 264 F.3d at 285.

### 1. Percentage-of-Recovery

To determine what constitutes a reasonable award under the under the percentage-of-

recovery method, courts consider "the Gunter factors, the Prudential factors, and any other factors

that are useful and relevant with respect to the particular facts of the case.   The fee award

reasonableness factors 'need not be applied in a formulaic way' because each case is different,

'and in certain cases, one factor may outweigh the rest.'"   In re AT&T Corp., 455 F.3d 160, 166

(3d Cir. 2006) (quoting In re Rite Aid, 396 F.3d at 301).   Together, Gunter and Prudential provide

ten factors for courts to consider:

> (1) the size of the fund created and the number of beneficiaries; (2)
> the presence or absence of substantial objections by members of the
> class to the settlement terms and/or fees requested by counsel; (3)
> the skill and efficiency of the attorneys involved; (4) the complexity
> and duration of the litigation; (5) the risk of nonpayment; (6) the
> amount of time devoted to the case by plaintiffs' counsel; (7) the
> awards in similar cases; (8) the value of benefits attributable to the
> efforts of class counsel relative to the efforts of other groups, such
> as  government  agencies  conducting  investigations;  (9)  the
> percentage fee that would have been negotiated had the case been
> subject to a private contingent fee arrangement at the time counsel
> was retained; and (10) any innovative terms of settlement.

Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000), Prudential, 148 F.3d at

333–40.

The Court finds that the requested fee award of $1,102,500 (35% of the common fund) is

unreasonable and will reduce the award to $787,500 (25% of the common fund).   To be sure,

several factors weigh in favor of the reasonableness of the requested fees.   The size of the fund—

$3.15 million benefitting over 300,000 class members—is comparable to other data breach

settlements in this district.  No class member objected to the Settlement or the amount of fees requested; Class Counsel has substantial experience handling data breach class actions, which cases are complex;[5] the risk of nonpayment was fairly high given the litigation risks and the uncertainties of Plaintiffs prevailing at trial; and Class Counsel devoted considerable time to this case.

However, numerous other factors weigh strongly against approval of the requested fees.

**Factors Four and Six:  The Complexity and Duration of the Litigation and The Amount of Time Devoted to the Case by Plaintiffs' Counsel**.  Though no doubt a complex case, this case settled at an early stage of the litigation before even motion to dismiss briefing was complete.  See ECF 29 (Order staying further briefing on Motion to Dismiss pending mediation). The parties participated in a one-day mediation within months of the case being filed and before any formal discovery commenced.  Discovery was limited:  no depositions were taken, there were no objections to the Settlement to reconcile, no summary judgment motions, and only one Court hearing on final approval of the Settlement.

**Factor Seven:  The Awards in Similar Cases**.  In common fund cases in which the percentage-of-recovery method is used, the Third Circuit has held that fee awards between 19–45% are reasonable.  In re Gen. Motors, 55 F.3d at 822.  Awards in data breach class actions, however, typically fall on the lower end of that range.  Holden v. Guardian Analytics, Inc., No. 23-cv-2115, 2024 WL 2845392, at *11 (D.N.J. June 5, 2024) ("[I]n class action settlements of data breach cases, attorney fees awards have generally been between 20% to 30% of the settlement) (collecting cases).

**Factor Ten:  Any Innovative Terms of Settlement**.  The settlement lacks innovative

---

[5] Fulton-Green v. Accolade, Inc., No. 18-cv-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (Pratter, J.) (commenting that data breach class actions are "complex" and "a risky field of litigation").

terms and largely tracks settlements in similar data breach cases in this district.  See, e.g., In re

Onix Grp., LLC Data Breach Litig., No. 23-cv-2288, 2024 WL 5107594, at *2 (E.D. Pa. Dec. 13,

2024) (Marsten, J.) (settlement included options to submit a claim for a *pro rata* cash payment,

reimbursement for documented losses, and 12 months of credit monitoring services); Barletti v.

Connexin Software, Inc., No. 22-cv-04676, 2024 WL 1096531, at *1 (E.D. Pa. Mar. 13, 2024)

(Wolson, J.) (same).

* * *

"Many courts, including several in the Third Circuit, have considered 25% to be the

'benchmark' figure for attorney fee awards in class action lawsuits, with adjustments up or down

for significant case-specific factors."  In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 262

(D. Del. 2002), aff'd, 391 F.3d 516 (3d Cir. 2004).  Considering the early settlement of this case,

Counsel's experience litigating these same data breach class actions, and the lack of innovative

settlement terms, but also acknowledging the significant benefits to the class including

reimbursement for out-of-pocket expenses incurred and a non-trivial *pro rata* cash payment, the

Court finds that counsel is entitled to 25% of the common fund in attorneys' fees.

This case was only filed sixteen months ago in March 2024, and it settled after eleven

months.  The Court does not doubt that Class Counsel invested significant time investigating the

claims in this suit and preparing for mediation, but this case only had limited motions practice and

no formal discovery other than some amount of pre-mediation discovery.  Counsel is experienced

in these cases, recently representing classes in several other similar data breach cases, and is no

doubt familiar with the applicable law and could prepare for the mediation efficiently without

having to start researching at "square one."  The Court must also consider that Class Counsel's

award comes directly from the common fund established to benefit the class.  See Ward, 2020 WL

759389, at *10 (citing <u>Brown v. Rita's Water Ice Franchise Co. LLC</u>, 242 F. Supp. 3d 356, 371

(E.D. Pa. 2017) (Savage, J.); Fed. R. Civ. P. 23 Advisory Committee Note ("[T]he relief actually

delivered to the class can be a significant factor in determining the appropriate fee award.").  The

Court must recognize that every dollar to counsel is a dollar less to the class.

       For these reasons, the Court finds that a 25% award is reasonable.

### 2.  Lodestar Method

       Under the lodestar method, attorneys' fees are calculated by multiplying the reasonable

number of hours worked by a reasonable billing rate.  <u>Cullen v. Whitman Med. Corp.</u>, 197 F.R.D.

136, 150 (E.D. Pa. 2000) (Brody, J.).  The Court employs the lodestar method only to confirm its

finding, under the percentage-of-recovery method, that the requested attorneys' fee award is

unreasonable.

       According to Class Counsel's Joint Declaration, Class Counsel spent a total of 1,079.79

hours through May 16, 2025 for a lodestar total of $890,805, a lodestar multiple of approximately

1.24 when compared to the $1,102,500 requested.  Class Counsel cites to numerous cases

approving lodestar multipliers ranging from one to four.  ECF 38-1 at 16–17.

       The Court recognizes that the Third Circuit has found "multipliers ranging from one to

four" as frequently awarded in common fund cases, <u>In re Prudential</u>, 148 F.3d at 341 (citation

modified), but in evaluating the lodestar amount, the Court must also consider the reasonableness

of both the rate charged and the total hours spent.  <u>Reibstein v. Rite Aid Corp.</u>, 761 F. Supp. 2d

241, 259 (E.D. Pa. 2011) (Robreno, J.).  After a careful review of Plaintiffs' Motion for Attorneys'

Fees (ECF 38) and based upon its questioning of counsel about the fees requested at the June 16,

2025 final approval hearing, the Court determined it needed additional information to determine

the reasonableness of the rate charged and total hours spent.  The Court therefore ordered that

Class Counsel submit detailed timekeeping records and other supporting materials.  ECF 44.

Particularly troubling to the Court was Class Counsel's Declaration attesting that Mr. Robert Ahdoot, a senior partner at Ahdoot & Wolfson, PC recording an hourly rate of $1,300.00 (more than $200 per hour higher than the next highest hourly rate attorney), recorded 90.4 total hours on this case, ECF 38-2, ¶ 15, notwithstanding that Mr. Ahdoot was not appointed as interim Class Counsel (see ECF 10, ¶ 5), does not appear on the signature bloc of any pleadings or briefs, and never entered a notice of appearance in this consolidated case.

In accordance with the Court's Order, Plaintiffs filed a supplemental memorandum in support of their Fee Motion and attached an exhibit under seal containing detailed timekeeping records for several attorneys who worked on this case, including Mr. Ahdoot. ECF 46–47. The Court has reviewed *in camera* these detailed timesheets and determines that the number of hours worked on this case by the co-counsel law firms are not reasonable.

The Court first notes that it does not doubt all counsel on this case worked diligently to obtain a favorable settlement for their clients. However, in the Court's determination, many of the hours worked were duplicative, excessive, and/or reflect inefficiencies. As an example, Mr. Ahdoot spent approximately 36.8 hours on the duplicative tasks of revising and reviewing several drafts of the final approval motion and the fee petition. ECF 47 (filed under seal).[6] Compounding this work, the highest hourly rate attorney from co-counsel's firm, Mr. Jonathan Shub recording an hourly rate of $1,050, spent an additional 11.25 hours editing the final approval and fee petition briefs. Id. Combined, the two highest hourly rate attorneys spent about 48.05 hours editing two briefs, one of which—the Motion for Final Approval—regurgitates many aspects of the already

---

[6] The Court notes that approximately 41% of Mr. Ahdoot's total hours were spent on finalizing the motion for final approval and fee petition *after* a settlement had been reached. The remainder of his time was disbursed among many other tasks, including pre-suit fact investigation, filing of a consolidated complaint, briefing a Motion to Dismiss, participating in a mediation, drafting a settlement agreement, and preparing a motion for preliminary approval of the settlement.

approved Motion for Preliminary Approval.  This time is in addition to the scores of other attorneys from both firms, including experienced partners, who recorded time for drafting and editing the briefs.  Again, the Court does not wish to minimize in any way the excellent work of these attorneys or their efforts on behalf of the class.  But the Court takes seriously its obligation to protect the interests of class members as envisioned by Rule 23, as every dollar to counsel is a dollar less to the class.

Additionally, the number of hours counsel recorded in this case is substantially higher than in comparable recent data breach cases in this district.  See, e.g., In re Philadelphia Inquirer Data Sec. Litig., No. 24-cv-2106, 2025 WL 845118, at *14 (E.D. Pa. Mar. 18, 2025) (Marston, J.) (class counsel collectively, which included attorneys from the Shub, Johns, & Holbrook law firm, reportedly recorded 293.26 hours in a data breach class action in which the parties settled after mediation); Braun v. Philadelphia Inquirer, LLC, No. 22-cv-4185, 2025 WL 1314089, at *12 (E.D. Pa. May 6, 2025) (Younge, J.) (class counsel spent 705 hours litigating a data breach class action over a three-year period, which included discovery and "extensive negotiating with Defendant and working with Magistrate Judge Wells").  The Court cannot find a meaningful distinction between this case and these other cases—nor does counsel point to any—that would require many more hours worked on this less lengthy and less procedurally-taxing litigation.

Based on this holistic approach, the Court finds it reasonable to reduce the lodestar amount by 15% across-the-board when conducting its lodestar cross-check.  The revised lodestar amount therefore reduces to $757,184.25.[7]  The lodestar multiplier based on the Court's modified award of $787,500 (25% of the common fund) compared to the modified lodestar amount, is 1.04.  In the Court's view, considering all the above factors, the cross-check yields a reasonable result.

---

[7] The Court recognizes that this does not account for time worked after May 15, 2025.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Final Approval of the Settlement is **GRANTED** and Plaintiffs' Motion for Attorneys' Fees, Litigation Costs and Expenses, and Service Awards is **GRANTED IN PART** and **DENIED IN PART**.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 24\24-1148 Gravley v Fresenius\24cv1148 memo re Mot. Final Approval.docx